RECEIVED
AUG 12 2019
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JUSTIN DALE TUREAU | CIVIL ACT. NO. 1:18-cv-973 |
| -vs- | JUDGE DRELL |
| BEPCO, L.P., ET AL | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the Court is a motion to dismiss (Doc. 17) filed by Defendants Chevron U.S.A. Inc. ("Chevron") and Hess Corporation ("Hess"), a motion to dismiss (Doc. 18) filed by Defendants Chisholm Trail Ventures, L.P. ("Chisholm"), BEPCO, L.P. ("BEPCO"), and BOPCO, LLC (f/k/a BOPCO, L.P.) ("BOPCO"), a report and recommendation (Doc. 66), an objection (Doc. 67) filed by Chevron and Hess, an objection (Doc. 68) filed by Chisholm, BEPCO, and BOPCO, a reply to Defendants' objections (Doc. 69) filed by Plaintiff Justin Dale Tureau ("Tureau"), an opposition to Defendants' motions to dismiss (Doc. 74) filed by Tureau, a reply (Doc. 75) filed by Chevron and Hess, and a reply (Doc. 76) filed by Chisholm, BEPCO, and BOPCO. For the following reasons, the Court **ADOPTS** the result but not the balance of the report and recommendation (Doc. 66), finds that it must **ABSTAIN** from further consideration of this case, **DENIES AS MOOT** the motions to dismiss (Docs. 17 & 18), and **REMANDS** the matter to the 19th Judicial District Court for the Parish of East Baton Rouge.

### I.   FACTS & PROCEDURAL HISTORY

This is an oil and gas legacy suit in which a property owner is seeking an injunction requiring Defendants, who previously conducted oil and gas activities on or around his land, to remediate alleged present-day contamination caused by those historical activities.

1

Tureau owns property located in the Eola Oil & Gas Field in Avoyelles Parish, Louisiana.[1] He alleges that Chevron and Hess drilled and operated numerous oil and gas wells on his property, which included the construction and use of unlined earthen pits that have never been closed or have not been closed in conformance with state environmental laws and regulations, particularly 43 La. Admin. Code Pt XIX, § 101 *et seq* ("Statewide Order 29-B").[2] Tureau further alleges that Chisholm, BEPCO, and BOPCO drilled and operated numerous oil and gas wells on adjacent property that caused contamination of his property in violation of Statewide Order 29-B, among other regulations and state statutes.[3]

In a letter dated August 31, 2016, Tureau provided the Commissioner of the Louisiana Department of Natural Resources, Office of Conservation ("commissioner"), with formal notice of those alleged violations.[4] He stated that if the commissioner did not file suit under LA. REV. STAT. § 30:14 within ten days, then he would sue the responsible parties for injunctive relief pursuant to LA. REV. STAT. § 30:16.[5] In a subsequent letter to the commissioner dated September 27, 2016, Tureau reiterated his intention to file suit if the commissioner did not.[6] The commissioner ultimately failed to file suit.

Tureau filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge on September 14, 2017.[7] Chevron and Hess removed the suit on October 19, 2017, on the basis of

---

[1] Tract 1: 120 acres, more or less, lying North and West of the Union Pacific Railroad, located in Section 6, Township 2 South, Range 3 East, Avoyelles Parish; and Tract 2: A certain tract or parcel of land, with all improvements thereon containing 40.87 acres, more or less, situated, lying and being in Irregular Section 1, T2S, R2E, Tenth Ward of Avoyelles Parish, Louisiana, bounded North by Herbert Beverly and Thomas Robert Frank, South by Dr. Calvin W. Hoffpauir and Thomas Robert Frank, East by Glaze Property and West by Bayou Boeuf. Pet. (Doc. 1-2) at ¶ 3.
[2] Id. at ¶ 9.
[3] Id. at ¶ 11.
[4] Pet. Ex. A (Doc. 1-2) at 14-17.
[5] Id.
[6] Pet. Ex. B (Doc. 1-2) at 18-19.
[7] Pet. (Doc. 1-2).

diversity jurisdiction.[8] On November 10, 2017, Tureau filed a motion to remand arguing that the State of Louisiana was the real party in interest in this action.[9] The Magistrate Judge issued a report and recommendation determining that the motion to remand should be denied,[10] which the Court adopted.[11]

On November 16, 2017, Chevron and Hess filed a Rule 12(b)(6) motion to dismiss.[12] Chisholm, BEPCO, and BOPCO also filed a separate Rule 12(b)(b) motion to dismiss on the same day.[13] The Magistrate Judge issued a report and recommendation on January 4, 2019, recommending that both motions to dismiss be denied.[14]

## II.  LAW & ANALYSIS

### A. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). All well-pleaded facts shall be deemed as true and all reasonable inferences must be drawn in the plaintiff's favor. Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (citations omitted). Nonetheless, Rule 12(b)(6) motions to dismiss are viewed with disfavor and rarely granted. Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005).

---

[8] Notice of Removal (Doc. 1). This case was removed to the United States District Court for the Middle District of Louisiana. The action was transferred to the United States District Court for the Western District of Louisiana on July 25, 2018. Order (Doc. 48).
[9] Mot. to Remand (Doc. 15).
[10] Report & Recommendation (Doc. 62).
[11] J. (Doc. 72).
[12] Mot. to Dismiss (Doc. 17).
[13] Mot. to Dismiss (Doc. 18).
[14] Report & Recommendation (Doc. 66).

3

B. LOUISIANA NATURAL RESOURCES

Chevron and Hess argue that Tureau's claims should be dismissed with prejudice because § 30:16 does not apply to past violations.[15] Tureau responds that he is seeking remediation for present-day violations because the alleged contamination constitutes an ongoing violation. Thus, the dispositive issue is whether Tureau may use § 30:16 to compel remediation of present-day contamination caused by past oil and gas activities.[16]

1. Statutory and Regulatory Framework

The Constitution of Louisiana provides that:

> The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.

LA. CONST. ANN. art. IX, § 1. The legislature explained that this provision requires it to "set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest." LA. STAT. ANN. § 30:29.

The Office of Conservation ("OOC"), which is directed and controlled by the commissioner, has jurisdiction over the "disposal of any waste product into the subsurface by means of a disposal well and the regulation of all surface and storage waste facilities incidental to oil and gas exploration and production." LA. STAT. ANN. § 30:1. The OOC promulgated Statewide Order 29-B, which sets forth specific requirements for the plugging and abandonment of wells; operation and closure of oilfield pits; operation of wells and related surface facilities; storage, treatment, and disposal of non-hazardous waste; remediation of various contaminants; and general

---

[15] The motion to dismiss filed by Chisholm, BEPCO, and BOPCO argues that Tureau's action should be dismissed because he failed to comply with the notice requirements of § 30:16 prior to filing suit. Whether Tureau even has a cause of action under § 30:16 for the conduct alleged in the petition is the threshold matter. Given the outcome of this ruling, the Court declines to address the failure to comply with notice requirements argument.

[16] The Court will simply refer to this issue as whether § 30:16 applies to past violations, though it is fully cognizant of Tureau's argument that the alleged contamination is itself an ongoing violation.

4

operating requirements for oil and gas facilities. 43 La. Admin. Code Pt XIX, § 101 et seq; see also LA. STAT. ANN. § 30:4.

The commissioner is required to bring suit "[w]henever it appears that a person is violating or is threatening to violate a law of this state with respect to the conservation of oil or gas, or both, or a provision of this Chapter, or a rule, regulation, or order made thereunder, . . . to restrain that person from continuing the violation or from carrying out the threat." LA. STAT. ANN. § 30:14. "In this suit, the commissioner may obtain injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, as the facts warrant, including, when appropriate, injunctions restraining a person from moving or disposing of illegal oil, illegal gas, or an illegal product." Id. The legislature also created a mechanism through which an aggrieved property owner can bring suit in place of the commissioner:

> If the commissioner fails to bring suit within ten days to restrain a violation as provided in R.S. 30:14, any person in interest adversely affected by the violation who has notified the commissioner in writing of the violation or threat thereof and has requested the commissioner to sue, may bring suit to prevent any or further violations, in the district court of any parish in which the commissioner could have brought suit. If the court holds that injunctive relief should be granted, the commissioner shall be made a party and shall be substituted for the person who brought the suit and the injunction shall be issued as if the commissioner had at all times been the complaining party.

LA. STAT. ANN. § 30:16.

The legislature acted to protect, conserve, and replenish the environment when it created the OOC and provided it with the authority to promulgate rules and regulations, which the OOC exercised in promulgating Statewide Order 29-B. Significantly, the legislature not only mandated that the commissioner bring suit to enjoin violations of regulations such as Statewide Order 29-B, but also allowed for persons adversely affected by such violations to bring suit when the commissioner fails to timely do so after having been given appropriate notice. When an adversely affected person brings a § 30:16 claim he/she is effectively acting in the place of the commissioner.

5

Such a plaintiff cannot directly receive relief under the statutory scheme because whenever a suit is found to merit relief "the commissioner shall be made a party and shall be substituted for the person who brought the suit and the injunction shall be issued as if the commissioner had at all times been the complaining party." LA. STAT. ANN. § 30:16. In essence, the legislature created a statutory scheme whereby property owners who have satisfied the necessary requirements can initiate administrative enforcement suits.

2. The Emergence of § 30:16 Claims for Past Violations

However, the use of § 30:16 claims for past violations is a relatively recent development. The emergence of such § 30:16 claims dovetails with two landmark Louisiana Supreme Court cases which severely curtailed the legal avenues available to oil and gas legacy plaintiffs. In 2010, the Louisiana Supreme Court held that "the deposit and storage of oilfield wastes into unlined pits which conduct terminated when the pits were closed [and any] dissolution of this contamination" does not give rise to a continuing tort.[17] Marin v. Exxon Mobil Corp., 2009-2368 (La. 10/19/10), 48 So. 3d 234, 255. The following year, the Louisiana Supreme Court established the subsequent purchaser doctrine, which provides that:

> an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

Eagle Pipe & Supply, Inc. v. Amerada Hess Corp., 2010-2267 (La. 10/25/11), 79 So. 3d 246, 256-57. Taken together, the Marin and Eagle Pipe rulings greatly limited the legal avenues available to oil and gas legacy plaintiffs for historical violations.

---

[17] It does not escape the Court's notice that Tureau's argument that the alleged contamination is a continuing violation resembles the continuing tort doctrine argument.

6

A few years after those rulings, claims under § 30:16 for past violations began appearing in the case law. In 2018, a sister federal court produced the first written ruling in which claims for past violations under § 30:16 are discussed. See Watson v. Arkoma Dev., LLC, No. CV 17-1331, 2018 WL 1311208 (W.D. La. Feb. 5, 2018), report and recommendation adopted, No. CV 17-1331, 2018 WL 1311177 (W.D. La. Mar. 13, 2018). Shortly thereafter, rulings addressing § 30:16 claims for past violations proliferated. See Guilbeau v. 2 H, Inc., No. CV 14-2867, 2016 WL 4507634, at *1 (W.D. La. Aug. 23, 2016), aff'd sub nom. Guilbeau v. Hess Corp., 854 F.3d 310 (5th Cir. 2017); Glob. Mktg. Sols., L.L.C. v. Blue Mill Farms, Inc., 2018-0093 (La. App. 1 Cir. 11/6/18), 267 So. 3d 96.

Oil and gas legacy plaintiffs appear to be recalibrating their efforts in light of Marin and Eagle Pipe by proceeding under § 30:16, the viability of which the Louisiana Supreme Court has yet to rule on. At a minimum, this is the situation in the instant matter. In 2013, Tureau brought suit for alleged contamination to the same tracts of land that form the basis of this matter.[18] See Tureau v. 2 H Inc., No. CV 13-2969, 2016 WL 4499413 (W.D. La. Aug. 23, 2016). The Court dismissed that action based on the then newly-minted subsequent purchaser doctrine, and the Fifth Circuit dismissed Tureau's appeal as moot in light of a ruling in a related case. Id.; Guilbeau v. Hess Corp., 854 F.3d 310 (5th Cir. 2017). It was only after this dismissal that Tureau proceeded under § 30:16, although the underlying facts (and most Defendants) are the same as the in the initial case.[19]

---

[18] Tureau filed another suit for alleged contamination of the same tracts of land that form the basis of this matter in the 12th Judicial District Court for the Parish of Avoyelles on May 9, 2017. State of Louisiana v. BEPCO LP, et al, 17-cv-780, Pet. (Doc. 1-2). That case was removed to the Court on June 16, 2017. Notice of Removal (Doc. 1). Tureau voluntarily dismissed the case (Doc. 7) after a *sua sponte* jurisdictional briefing order by the Magistrate Judge. (Doc. 6).

[19] The Court declines to address the res judicata concerns present in this case.

7

3. Applicability of § 30:16

Whether § 30:16 applies to past violations remains uncertain. The closest the Louisiana Supreme Court has come to opining on the matter was in Marin, the case foreclosing the continuing tort doctrine as an avenue for relief in oil and gas legacy suits. In a footnote, the court stated:

> We note that one of the reasons we granted this writ was to determine whether a subsequent purchaser has the right to sue for property damages that occurred before he purchased the property, particularly where the damage was not overt. However, we need not reach that determination in this case because, assuming the Breauxs had a right as a subsequent purchaser to sue in tort for property damage, that right has prescribed. *Further, we note that regardless of who has standing to pursue claims for money damages, the current owner of property always has the right to seek a regulatory cleanup of a contaminated site.* La. R.S. 30:6(F); La. R.S. 30:16.

Marin, 48 So.3d at 256 n.18 (emphasis in original). This dicta serves as the foundation for Tureau's argument that § 30:16 applies to past violations.

In 2018, the First Circuit Court of Appeal of Louisiana examined § 30:16 in a case that closely mirrors the present matter. Glob. Mktg., 267 So. 3d 96. In Global Marketing, the plaintiff purchased a tract of land and then brought a legacy suit against several oil and gas entities alleging contract and tort claims. Id. at 97-98. After a series of claims were dismissed, the plaintiff amended its petition for a fifth time and sought a mandatory and prohibitive injunction under § 30:16 for alleged violation of Statewide Order 29-B, among other regulations. Id. at 98. The defendants filed an exception of no cause of action before the trial court arguing that the plaintiff did not have a cause of action under § 30:16 to prevent wholly past violations. Id. at 99. After oral argument, the trial court granted the exception of no cause of action. Id.

On appeal, the court was presented with three grounds of alleged reversible error:

(1) The trial court committed error in finding that Global had no cause of action under La. R.S. 30:16.
(2) The trial court committed error in finding that La. R.S. 30:16 applies only to alleged continuing or present violations of oil and gas statutes and the commissioner's oil and gas regulations.

8

(3) The trial court committed error in refusing to follow the Supreme Court's rulings in the *Marin [v. Exxon Mobile [Mobil] Corp.,* 2009-2368 (La. 10/19/10), 48 So.3d 234] and *Eagle Pipe* cases.

Id. The court concluded that the plaintiff had sufficiently stated a cause of action because the petition alleged that "the parties made defendants in this supplemental petition are violating Statewide Order 29-B . . . by failing to remediate the property." Id. at 101 (emphasis in original). Having found that the trial court erred on that narrow pleading ground, the court declined to address whether § 30:16 applies to past violations and remanded the matter. Id.[20]

Days later, one of our sister courts reached a similar conclusion. In Watson v. Arkoma Development, LLC, the court addressed a Rule 12(b)(6) motion seeking to dismiss the plaintiffs' § 30:16 claims on the basis that the statute does not apply to past violations. 2018 WL 6274070, at *9. As was the case in Global Marketing, the plaintiffs had alleged that the defendants "are violating Statewide Order 29-B." Id. at *10. Thus, the court reasoned that they pleaded sufficient facts to survive a Rule 12(b)(6) motion and declined to determine at that juncture whether § 30:16 applies to past violations. Id. Other than the instant suit and other matters related to it, these are the only written rulings that have examined the applicability of § 30:16 to past violations as of the date of this decision.

---

[20] Both the dissent and the concurrence in Global Marketing are instructive:

> I respectfully disagree with the opinion reached by the majority. Global's pleadings read as a whole clearly seek to remedy past violations. As such, they do not state a cause of action under the provisions of La R.S. 30:16. The plain language of La. R.S. 30:16 authorizes suit to "prevent" any (present day) or further (future) violations. Based on the facts as alleged in the pleadings, the law does not afford the plaintiffs a remedy.
>
> …
>
> I respectfully concur in the result. While it appears that La. R.S. 30:14 and La. R.S. 30:16 provide only for a prohibitory injunction restraining a person from continuing a violation or from carrying out a threat in violation of the law, La. R.S. 30:16 also provides that the commissioner may obtain a mandatory injunction. Because the statutes seem to be in contradiction, I concur in reversing the granting of the exception raising the objection of no cause of action. There are other procedural actions available to the parties to more completely address this apparent inconsistency.

267 So. 3d at 101-02.

4. Erie Guess

The threshold issue in this case is whether § 30:16 applies to past violations. In the Fifth Circuit, the final decisions of the Louisiana Supreme Court control interpretations of Louisiana law. In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007) (citation omitted). "In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case." Id. (citation omitted). "[A]lthough we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them." Id. (citation omitted).

The Louisiana Supreme Court has yet to determine whether § 30:16 applies to past violations. The Marin footnote citing § 30:16 is clearly dicta.[21] Moreover, is seems unlikely that the Louisiana Supreme Court would *sua sponte* affirm the validity of the novel use of a decades-old statute in a footnote. The First Circuit Court of Appeal of Louisiana, clearly aware of Marin as it is cited in Global Marketing, left open the question of whether § 30:16 applies to past violations. This strongly implies that it too did not believe the Louisiana Supreme Court made a finding on the issue. Thus, the Court is tasked with making an Erie guess as to the validity of the novel use of a statute that could reanimate oil and gas legacy litigation in the absence of any final decision on the matter by any state appellate court.

C. BURFORD DOCTRINE

A district court may, in its sound discretion, abstain from exercising its equity jurisdiction where doing so would "be prejudicial to the public interest." Burford v. Sun Oil Co., 319 U.S. 315, 318 (1943) (citation omitted). Burford abstention is appropriate "where the issues 'so clearly

---

[21] The Court notes that LA. REV. STAT. § 30:6(F) is cited before § 30:16 in the footnote, the significance of which Tureau does not explain.

involve basic problems of [State] policy' that the federal courts should avoid entanglement." Aransas Project v. Shaw, 775 F.3d 641, 649 (5th Cir. 2014) (citing Burford, 319 U.S. at 332). The Supreme Court explained when abstention under Burford is proper:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989) (citation omitted).

The Fifth Circuit considers the following factors in determining whether to exercise the Burford abstention:

> (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't, 849 F.3d 615, 623 (5th Cir. 2017) (citation omitted). "*Burford* abstention may be raised at any time, including on appeal, and it may be raised by a court sua sponte." Lentz v. Trinchard, 730 F. Supp. 2d 567, 587 (E.D. La. 2010) (collecting cases).

Given the "comprehensive scheme for the enforcement of oil and gas obligations" Louisiana has established, Verona Entergy Inc. v. J. K. Petroleum Inc., No. CV 15-2893, 2016 WL 1436690, at *2 (W.D. La. Apr. 11, 2016), the Burford doctrine is implicated in this case.[22] First,

---

[22] As discussed above, although Tureau is currently the plaintiff, this suit is fundamentally an administrative enforcement action initiated by an adversely affected person. Again, if this suit were to succeed on the merits, the commissioner would be made a party and would "be substituted for the person who brought the suit and the injunction [would] be issued as if the commissioner had at all times been the complaining party." LA. STAT. ANN. § 30:16. Tureau could never receive an injunction or final judgment in his name or otherwise direct the course of remediation

deciding whether § 30:16 applies to past violations will profoundly impact oil and gas legacy litigation, remediation of contaminated state land, and property sales throughout the state. These broad policy issues are of substantial public import and clearly transcend the question of who should pay for the remediation of this particular plot of land. Second, given the pending § 30:16 legacy suits throughout Louisiana, the Court's review of this question could significantly disrupt state efforts to establish a coherent policy for the remediation of contaminated state land. The Court will analyze the relevant factors individually to fully explore whether abstention under Burford is required.

1. State Law Cause of Action

Tureau's claims arise under § 30:16. This factor weighs in favor of abstention.

2. Unsettled Issue of State Law

The threshold issue in this case is whether § 30:16 applies to past violations. There is no final decision of a state appellate court that answers this question. This factor supports abstention.

3. Important State Interest

Two important and intertwined state interests are at issue in this case: (1) the future of oil and gas legacy litigation; and (2) the future of the remediation of contaminated land. Louisiana state courts spent years grappling with oil and gas legacy suits. If the Court were to rule that § 30:16 does apply to past violations, this could largely undo the limitations on oil and gas legacy suits put in place by the Louisiana Supreme Court. If the Court were to rule that § 30:16 does not apply to

---

while proceeding under § 30:16 because he would necessarily be substituted by the commissioner upon success on the merits.

This analysis does not necessarily conflict with other rulings finding that the State of Louisiana was not the real party in interest. See, e.g., Watson, 2018 WL 1311208. Those rulings were issued in the context of motions to remand, which must be determined based on the facts at the time of removal. See Louisiana v. Am. Nat. Prop. Cas. Co., 746 F.3d 633, 636 (5th Cir. 2014) ("[J]urisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction."). The commissioner is not substituted until success on the merits.

past violations, this could hamper efforts at remediating contaminated land, a vital interest enshrined in the Constitution of Louisiana. This factor weighs in favor of abstention.

4. Coherent State Policy

As discussed above, there are § 30:16 claims before both state and federal courts throughout Louisiana. There is a strong possibility that a ruling by the Court could conflict with rulings in other courts. Such inconsistencies would create an uncertain, and thus unequitable, system for determining who bears the responsibility for remediation of contaminated land until the Louisiana Supreme Court ultimately ruled on the matter. This factor supports abstention.

5. Special State Judicial Forum

Section 30:16 states that a suit may be brought "in the district court of any parish in which the commissioner could have brought the suit [under § 30:14]." LA. STAT. ANN. § 30:16. Section 30:14 provides that "[v]enue shall be in the district court in the parish of the residence of any one of the defendants or in the parish where the violation is alleged to have occurred or is threatened." LA. STAT. ANN. § 30:14. Thus, there is no special state forum for judicial review of suits brought under § 30:16. This factor does not support abstention.

6. The Burford Factors Weigh in Favor of Abstention

On balance, the Burford factors weigh in favor of abstention from this case. The Court is particularly cognizant of the important state interests in play and the need for a coherent state policy. The resolution of the issue at hand will have a monumental impact on the condition and value of state land. Moreover, Louisiana state courts are already examining whether § 30:16 applies to past violations, and the question will almost assuredly reach the Louisiana Supreme Court eventually. Given the extensive body of Louisiana case law on oil and gas legacy suits and the idiosyncratic statutory scheme of § 30:14 and § 30:16, the Court finds that a ruling on this

matter at this point in time would be disruptive. Once the Louisiana Supreme Court has clearly indicated its position on the matter, the Court may exercise jurisdiction over future § 30:16 claims when appropriate.

### III. CONCLUSION

The Court fully appreciates its duty to exercise its jurisdiction absent exceptional circumstances. However, this suit, which concerns a unique state statutory scheme designed to address interests that are uniquely important to the state, presents such exceptional circumstances. The fact that these novel claims began proliferating after Louisiana state courts carefully delineated the parameters of oil and gas legacy suits further warrants restraint from the Court to ensure it does not disturb a painstakingly developed body of law. Thus, the Court must abstain from further consideration of this matter. Accordingly,

**IT WILL BE ORDERED** that the Court **ADOPTS** the result but not the balance of the report and recommendation (Doc. 66).

**IT WILL FURTHER BE ORDERED** that the motions to dismiss (Docs. 17 & 18) be **DENIED AS MOOT**.

**IT WILL FURTHER BE ORDERED** that this matter be **REMANDED** to the 19th Judicial District Court for the Parish of East Baton Rouge.

**SIGNED** on this 12TH day of August, 2019, at Alexandria, Louisiana.

JUDGE DEE D. DRELL
UNITED STATES DISTRICT COURT